### LORE and others *vs.* STILES and wife.

1. Where a general grant is made of two acres of land adjoining or surrounding a house, part of a larger quantity, the choice of the two acres is in the grantee, and a devise is to be considered as a grant.

2. The grantee of such devisee has the right of selection, if not made before the conveyance to him.

3. If the selection cuts off the owners of the rest of the land from access thereto, a way of necessity exists in their favor over the land selected.

On final hearing on pleadings and proofs.

*Messrs. Potter and Nixon*, for complainants.

THE CHANCELLOR.

Henry Bradford, late of the county of Cumberland, deceased, by his will, dated November 26th, 1859, devised as follows : " I give and bequeath to my wife Sarah, the house and lot where Ebenezer Whitaker now lives, and also two acres of land, purchased of Ebenezer Westcott, adjoining the above mentioned lot, to have the same during her natural life, and after her death to go to my son Enos." His wife survived him. On her death, Enos took possession of the house. The property is in the village of Newport, in Cumberland county. Enos afterwards conveyed the devised premises in fee to Daniel T. Davis, by whom the same were conveyed in fee to Sarah Stiles, one of the defendants, who is one of the daughters of the testator. The testator, at his death, owned in fee simple about seven acres of land adjoining the house

lot above mentioned. That land he had purchased of Ebenezer Westcott, part of it in 1815, and the rest in 1823. It adjoined the house lot (which is in shape a parallelogram,) on the entire southwesterly and northeasterly side of the latter. It had a front of thirty-five rods and sixteen links on the road leading to Newport Neck, and a front of seven rods and twenty-three links on Main street. About one acre (the part fronting on Main street,) was devised to the testator's son James. At the testator's death, the two acres were not designated in any way. Neither the widow nor Enos fenced them off, or in any other way designated them. Davis, after his purchase from Enos, selected them and fenced them off. By his selection, he located them on the road, taking for the purpose a piece of the depth of the house lot, extending from the southerly line of that lot to the southerly line of the Westcott land, and being about nine rods deep and including the whole front of the property on the road to Newport Neck. It does not appear when this was done, but it must have been prior to the 31st of January, 1863, for his deed to Mrs. Stiles is dated on that day. The bill alleges that the testator made no disposition of the rest of the five acres by his will, and that it belongs by descent to the children of the testator, all of whom but one are living, and the children of his deceased son James. The bill is filed by the children of the testator and those of James, with the husbands of such of them as are married women, against Mrs. Stiles and her husband. It states that the division made by Davis. was without the knowledge or consent of the heirs-at-law of the testator, and the complainants allege that if it be permitted to stand, they will be cut off from access to their land from the road or street; that there is no other way of access to their land, and that the land fronting on the street is valuable for building lots, and the loss of any part of the frontage would be material to them. They propose a division, by which part of the land lying on the street will be assigned to the heirs-at-law, and the object of the bill is to obtain such division. The testator evidently intended that his widow

and Enos should be free to locate the two acres as they might choose, for he not only does not impose any restrictions on their choice, but does not devise the rest of the five acres specifically, and directs that all of his land not specifically disposed of by the will, be sold, and that the money arising from the sale, after deducting expenses, be, with the residue of his personal estate, equally divided among his children. He, however, as before stated, devised another part of this Westcott property to his son James, the part which fronts on Main street. It appears that since the testator's death, a street has been opened east of that part of the five acres which was left after fencing off the two acres taken by Davis, and that part of that residue fronts for a considerable distance on that street, and thus access to it is provided. If this were not so, a way of necessity would exist over the two acres, in favor of the owners of the rest of the five acres. The value of the land in question for building purposes, was undoubtedly far less at the date of the testator's death, which took place about 1860, than it is at present, if indeed there was any demand for it for those purposes; and in the eleven years which elapsed between the fencing off of the two acres by Davis and the filing of the bill in this cause, the property has probably risen in value, and a reason for disturbing the selection may present itself now to the heirs-at-law, which perhaps did not exist, either at the testator's death or when the division was made. However that may be, the location had been made, and as far as appears, acquiesced in for over eleven years, when the bill was filed. The relief sought by the bill cannot be granted. The right of the widow and Enos, or their grantees, to select and locate the two acres, is undoubted. Where a general grant is made of a certain number of acres of land adjoining or surrounding a house, part of a larger quantity, the choice of the land granted is in the grantee, and a devise is to be considered as a grant. *Hobson* v. *Blackburn*, 1 *Myl. & K.* 571, 575 ; *Duckmanton* v. *Duckmanton*, 5 *H. & N.* 219 ; 1 *Jarman on Wills* 320 ; *Jacques* v. *Chambers*, 2 *Coll.* 435 ; *Vin. Abr.*, 8 *Vol., p.* 48, *pl.* 11.

The bill will be dismissed.